**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------

SHIVA STEIN,

       Plaintiff,

v.

IKONICS CORPORATION, BILL ULLAND, GLENN SANDGREN, MARIANNE BOHREN, LOCKWOOD CARLSON, JEFFREY D. ENGBRECHT, GREG W. JACKSON, ERNEST M. HARPER, and DARRELL B. LEE,

       Defendants.

------------------------------------------------------

Civil Action No. 1:21-cv-6550

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Ikonics Corporation ("Ikonics or the "Company") and the members Ikonics's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Ikonics and TeraWulf Inc. and its affiliates ("TeraWulf").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on July 30, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Telluride Merger Sub I, Inc., a wholly owned subsidiary of TeraWulf, will merge with and into Ikonics with Ikonics surviving as a wholly owned subsidiary of Telluride Holdco, Inc. ("Holdco"), which is a wholly owned subsidiary of Ikonics, will merge with and into Ikonics with Ikonics surviving the transaction (the "First Merger"); and Telluride Merger Sub II, Inc., a wholly owned subsidiary of Holdco, will merge with and into TeraWulf, with TeraWulf surviving the transaction (the "Second Merger" and together with the First Merger, the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Ikonics stockholder will receive: (i) one share of Holdco common stock; (ii) one contractual contingent value right to be issued by Holdco; and (iii) $5.00 in cash (the "Merger Consideration").

3.   As discussed below, Defendants have asked Ikonics's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Northland Securities, Inc. ("Northland") in support of its fairness opinion.

4.   It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.   For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Ikonics's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because TeraWulf maintains its principal corporate office in this District and because the Company trades its stock on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Ikonics stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Bill Ulland has served as a member of the Board since 1972 and is the Chairman of the Board.

11. Individual Defendant Glenn Sandgren has served as a member of the Board since 2020 and is the Chief Executive Officer of the Company.

12. Individual Defendant Marianne Bohren has served as a member of the Board since 2016.

13. Individual Defendant Lockwood Carlson has served as a member of the Board since 2009.

14. Individual Defendant Jeffrey D. Engbrecht has served as a member of the Board since 2016.

15. Individual Defendant Greg W. Jackson has served as a member of the Board since 2017.

16. Individual Defendant Ernest M. Harper has served as a member of the Board since 2012.

17. Individual Defendant Darrell B. Lee has served as a member of the Board since 2012.

18. Defendant Ikonics a Minnesota corporation and maintains its principal offices at 4832 Grand Avenue, Duluth, Minnesota 55807. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "IKNX."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. <u>The Proposed Transaction</u>

21. Ikonics develops, manufactures, and sells photosensitive liquids and films for screen printing, awards and recognition, and dye sublimation markets worldwide. It operates through four segments: Chromaline, IKONICS Imaging, Digital Texturing, and Advanced

4

Material Solutions. The Company sells screen printing films, emulsions, and inkjet receptive films, photo resistant films, art supplies, glass, and related abrasive etching equipment to end users and distributors. It also provides sound deadening and weight reduction technology to the aerospace and electronics industries; products and services for etched composites, ceramics, glass, and silicon wafers; and digital texturing technology for putting patterns and textures into steel molds for the plastic injection molding and prototyping. Ikonics markets and sells its products directly, as well as through domestic and international distributors, magazine advertising, trade shows, and the internet. The Company was formerly known as The Chromaline Corporation and changed its name to Ikonics Corporation in December 2002. Ikonics was founded in 1952 and is based in Duluth, Minnesota.

22. On June 25, 2021, the Company and TeraWulf jointly announced the Proposed Transaction:

> EASTON, Md. and DULUTH, Minn., June 25, 2021 /PRNewswire/ -- TeraWulf Inc. ("TeraWulf"), poised to become a best-in-class bitcoin mining company, announced today it expects to become a Nasdaq-listed company through a business combination with IKONICS Corporation (Nasdaq: IKNX), a Duluth, MN imaging technology company. The companies have entered into a definitive merger agreement to combine under a new holding company, which will change its name to TeraWulf Inc. and is expected to be listed on The Nasdaq Stock Market LLC under the trading symbol "WULF".
>
> **Environmental, Social, and Governance (ESG) Focused Cryptocurrency Mining Company**
>
> TeraWulf is positioned to generate environmentally sustainable bitcoin at an industrial scale in the U.S. using over 90% zero-carbon energy. With 60,000 state-of-the-art miners on order, TeraWulf expects to have 50 MW of mining capacity online this year, and consistent with its buildout plan, expects to have 800 MW mining capacity deployed by 2025, enabling over 23 EH/s of expected hashrate.

TeraWulf is leveraging its management team's decades of experience in energy supply optimization, operations and engineering to create a premier platform for sustainable cryptocurrency mining. In addition, TeraWulf plans to implement its proven model for large cryptocurrency mine development and operations, which will help ensure TeraWulf can scale efficiently. With an institutional commitment to ESG principles and a target of 100% zero-carbon energy utilization, TeraWulf is positioned to be a leading miner of sustainable bitcoin globally.

Paul Prager, Chairman & Chief Executive Officer of TeraWulf, said, "TeraWulf represents an exciting new paradigm for cryptocurrency mining, which is built on a significant strategic advantage to utilize reliable, secure and low-cost sustainable energy sources to support our bitcoin mining activities. We have a talented management team with a proven track record and we are ready to rapidly scale due to an established supply chain and strong partner relationships. Site work is underway at the Company's mining facilities in New York and Pennsylvania with competitive power supply agreements already in place. As we prepare TeraWulf to trade on the public market, we are confident that we have the in-house technology, infrastructure and operations expertise to deliver unparalleled value for shareholders."

Nazar Khan, Chief Operating Officer, added, "Our team's unique access to energy assets and deep sector expertise in the wholesale electricity markets allows us to quickly develop a large-scale cryptocurrency mining platform that can help facilitate and can expedite the electric grid's transition to a zero-carbon future. Sited and managed appropriately, mining operations provide resiliency to the electric grid while leading the rapid development of the global fintech infrastructure."

Glenn Sandgren, Chief Executive Officer of IKONICS, said, "We are pleased to have reached this agreement with TeraWulf and look forward to partnering with them. This transaction provides ideal outcomes for our shareholders, customers and employees. It delivers our shareholders the opportunity to realize a substantial upfront cash payment while continuing to benefit from the value of our legacy imaging business, and provides them with the opportunity to participate in the potential upside of TeraWulf at an exciting time for the cryptocurrency mining space. The agreement will be instrumental in securing the long-term viability of IKONICS's legacy business, allowing it to continue to meet the needs of our

customers with a secure supply of our high quality products in addition to continued employment opportunities for our workforce."

**TeraWulf's Leading ESG Focus**

TeraWulf's aim is to be the most environmentally sustainable bitcoin mining company focused on ESG through its purpose-driven business practices, determined clean energy goals, and support for its communities. TeraWulf is committed to diversity, equity and inclusion at all levels of the organization and is proud of its highly qualified, diverse management team. As an industry leading producer of bitcoin with a targeted path of zero-carbon energy utilization, TeraWulf intends to maintain a high level of transparency, reliability, and environmental stewardship across its operations and throughout its supply chain.

Kerri Langlais, TeraWulf's Chief Strategy Officer, said, "Our core focus on ESG sets us apart from our competitors and ties directly to our business success. We are confident that by integrating flexible baseload energy demand into the electric grid, we will accelerate the transition to a more resilient, stable and sustainable energy future while generating attractive investor returns and tangible benefits, including job creation, for our communities."

**Transaction Overview**

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, each outstanding share of IKONICS common stock will receive $5.00 in cash, one CVR, and one share of the combined company's common stock. Through the CVRs, which will not be publicly traded, the IKONICS shareholders will be entitled to received 95% of the net proceeds from any sale of IKONICS's legacy business completed during the 18 months following the closing of the business combination, and will expire at the end of such 18 month period with respect to any portion of IKONICS's legacy business which has not been sold. The shares of the combined company's common stock to be received by the IKONICS shareholders will collectively represent 2% of the combined company's pro forma common equity ownership. As of March 31, 2021, IKONICS had a net book value of $11.6 million, cash of $4.4 million and working capital of $4.1 million.

Following consummation of the transaction, the legacy business of IKONICS will be operated consistent with past practices but will be positioned for sale on terms that are acceptable to the Board of Directors of the combined company.

The transaction is expected to close in the second half of 2021, subject to the receipt of regulatory approvals, the approval of IKONICS and TeraWulf shareholders, and other customary closing conditions.

**Management and Board of Directors**

The combined company will be led by **Paul Prager as Chairman and Chief Executive Officer**. In addition, several members of the existing TeraWulf leadership team are expected to serve on the combined company's management team, including:

- **Nazar Khan, Chief Operating Officer;**
- **Kerri Langlais, Chief Strategy Officer**;
- **Ken Deane, Chief Financial Officer**; and
- **Stefanie Fleischmann, Chief Legal Officer**.

TeraWulf's executive team has worked together for nearly 15 years in the energy infrastructure space with a proven track record of risk management and investment performance.

Upon completion of the transaction, all members of the IKONICS Board of Directors will resign and be replaced by persons to be designated by TeraWulf.

**Transaction Materials**

A presentation and additional materials regarding the transaction are available on TeraWulf's website.

**Advisors**

8

>Paul Weiss, Rifkind, Wharton & Garrison LLP is serving as legal advisor and Moelis & Company LLC is serving as financial advisor to TeraWulf. Faegre Drinker Biddle & Reath LLP is serving as legal advisor and Northland Capital Markets is serving as financial advisor to IKONICS.

\* \* \*

23. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Ikonics's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

24. On July 30, 2021, Ikonics and Holdco jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Northland in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the

rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "TeraWulf Projections") and provided them to the Board and the financial advisors by management of both Ikonics and TeraWulf with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the TeraWulf Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2022: EBITDA as prepared by management, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27. The Registration Statement fails to include long term financial projections and estimates for the Company, including any satisfactory explanation on why there is an absence of the projections for the Company. Registration Statement at 72.

28. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly

understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Northland's *IKONICS Selected Public Companies Analysis*, the Registration Statement fails to disclose the multiples and metrics for each company reviewed by Northland for the analysis.

32. With respect to Northland's *IKONICS Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose: (i) the merger values for each transaction reviewed; (ii) the merger consideration paid to the shareholders of the target companies

11

in the selected transactions; (iii) the revenue multiples observed for the selected precedent transactions; and (iv) the closing dates of the selected transactions.

33. With respect to Northland's *TeraWulf Selected Public Companies Analysis*, the Registration Statement fails to disclose the multiples and metrics for each company reviewed by Northland for the analysis.

34. With respect to Northland's *TeraWulf Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the terminal values of TeraWulf; (ii) line items used to calculate TeraWulf's projected unlevered, after-tax free cash flows for fiscal years 2021 through 2027; (iii) the inputs and assumptions underlying the use of the range of perpetuity growth rates of 1.0% to 3.0%; and (iv) the inputs and assumptions underlying the discount rates ranging from 11.1% to 17.5%.

35. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement

upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Ikonics within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Ikonics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ikonics, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ikonics, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 3, 2021               **MELWANI & CHAN LLP**

                                    By:  */s/ Gloria Kui Melwani*
                                         Gloria Kui Melwani
                                         1180 Avenue of the Americas, 8th Fl.
                                         New York, NY 10036
                                         Telephone: (212) 382-4620

16

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*